# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| INNOVATION SCIENCES, LLC,<br><br>   Plaintiff,<br><br> v.<br><br>HTC CORPORATION,<br><br>   Defendant. | Civil Action No. 4:19-cv-00752-ALM<br><br>JURY TRIAL DEMANDED |

## PLAINTIFF INNOVATION SCIENCES, LLC'S OPPOSITION TO MOTION TO DIMISS FILED BY DEFENDANT HTC CORPORATION

Donald L. Jackson, VA Bar No. 42,882
James D. Berquist, VA Bar No. 42,150
Gregory A. Krauss, VA Bar No. 84839
Alan A. Wright, VA Bar No. 46506
**DAVIDSON BERQUIST JACKSON & GOWDEY LLP**
8300 Greensboro Dr., Suite 500
McLean, Virginia 22102
Telephone: (571) 765-7700
Facsimile: (571) 765-7200

*Attorneys for Plaintiff Innovation Sciences, LLC*

# **TABLE OF CONTENTS**

I. BACKGROUND ................................................................................................................. 1

II. ARGUMENT ...................................................................................................................... 3

    A. This Court Should Deny HTC's Motion to Dismiss ............................................... 3

    B. In the alternative, This Court Should Consolidate This Action With the
*HTC I* Action ......................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Acumed LLC v. Stryker Corp.*,
 525 F.3d 1319 (Fed. Cir. 2008) .................................................................................. 5

*Adaptix, Inc. v. AT&T Mobility LLC*,
 2015 WL 12696204 (E.D. Tex. May 12, 2015) ............................................................ 11

*American Stock Exchange, LLC v. Mopex, Inc.*,
 215 F.R.D. 87 (S.D.N.Y. 2002) ..................................................................................... 11

*CIVIX-DDI, LLC v. Expedia, Inc.*,
 2005 WL 1126906 (N.D. Ill. May 2, 2005) ............................................................... 4, 11

*Davis-Lynch, Inc. v. Hilcorp Energy Co.*,
 2009 U.S. Dist. LEXIS 125393 (E.D. Tex. 2009) ...................................................... 9, 10

*GeoTag, Inc. v. Frontier Communications Corp.*,
 2013 WL 12141427 (E.D. Tex. June 26, 2013) ............................................................ 6

*Gillig v. Nike, Inc.*,
 602 F.3d 1354 (Fed. Cir. 2010) ...................................................................................... 4

*Innovation Sciences, LLC v. HTC Corporation*,
 Civil Action 4:18-cv-00476 ........................................................................................... 1

*Jones v. Hardy*,
 727 F.2d 1524 (Fed. Cir. 1984) ...................................................................................... 4

*Keranos, LLC v. Silicon Storage Tech., Inc.*,
 797 F.3d 1025 (Fed. Cir. 2015) ................................................................................ 11, 12

*Orion IP, LLC v. Home Depot USA, Inc.*,
 2005 WL 8161153 (E.D. Tex. Oct. 7, 2015) ................................................................ 11

*Young Eng'rs, Inc. v. United States Int'l Trade Comm'n*,
 721 F.2d 1305 (Fed. Cir. 1983) .................................................................................. 4, 5

Plaintiff Innovation Sciences, LLC "("Innovation") files this Opposition to the motion filed by Defendant HTC Corporation ("HTC") to dismiss this action for alleged claim splitting. Innovation respectfully submits that it has not improperly split any claim against HTC and HTC's motion must be denied.

While Innovation does not dispute that the same three patents asserted against HTC in this action are the same three patents asserted against HTC in Innovation's so-called *HTC I* action, *Innovation Sciences, LLC v. HTC Corporation*, Civil Action 4:18-cv-00476, there is nothing improper about Innovation's present complaint. Just as HTC argues in its motion, the products at issue in *HTC I* are the HTC (1) U11 phone, (2) U11 Life phone, and (3) U12+ phone. The products at issue in this action are the HTC (1) Pixel 2 phone, (2) Exodus 1 phone, and (3) 5G Hub. There is no overlap between the products at issue in this action and those at issue in *HTC I* and the products at issue here are materially different even from an infringement perspective. These facts are fatal to HTC's motion.

**I.       BACKGROUND**

Innovation initiated *HTC I* on July 5, 2018 by filing a Complaint accusing HTC of infringing three patents by making, using, importing and selling the accused U11, U11 Life and U12+ phones. *See Innovation Sciences, LLC v. HTC Corporation*, Civil Action 4:18-cv-00476, Dkt. 1 ("*HTC I*"). The three patents asserted in that action are United States Patent Nos. 9,912,983 ("the '983 patent"), 9,729,918 ("the '918 patent"), and 9,942,798 ("the '798 patent"). Each of the accused products in that case include an HTC-designed application called "HTC Alexa," which is designed to function with Amazon's Alexa voice activated technology and exchange data through Amazon's cloud. Those accused products may also operate with technologies provided by Google, but Innovation's infringement analysis in *HTC I* related to the

HTC Alexa App, the smart home functionality of the accused HTC phones there, and the information communicated through those phones and the Amazon cloud.[1] Innovation had no awareness of the HTC products at issue in this action at the time the complaint was filed in *HTC I*. Indeed, it appears that two of the three HTC products at issue in this action were introduced <u>after</u> the *HTC 1* complaint was filed. As to the third, the mysteriously code-named "S2," that product was privately sold to Google as the Google Pixel 2 phone, though manufactured by HTC.

Although HTC now alleges that the HTC products at issue in this action are similar to those accused of infringement in *HTC I*, HTC failed to identify any of the products accused here as being substantially similar to those at issue in *HTC I* <u>and</u>, importantly, HTC failed to produce any documents relating to the Pixel 2 phone, the Exodus 1 phone or the 5G Hub in the *HTC I* action, other than a smattering of documents that were incidentally produced because they also relate to the products accused in *HTC I*.[2] In August 2019, Innovation's counsel learned HTC has sold a significant number of a mysterious "S2" product found in a single spreadsheet produced by HTC, representing revenues many times larger than those reported from the sale of the products accused of infringement in *HTC I*. Through independent investigations of its own, Innovation determined that the S2 product was in fact the Pixel 2 phone HTC supplied to Google, Inc. That phone, unlike the phones at issue in *HTC I*, was privately sold to Google

---

[1] As this Court knows, Innovation also sued Amazon.com, Inc. on the same day as well as Honeywell, Inc. and Vector Security Inc. All four lawsuits were directed to the implementation and/or use of the Amazon Alexa technology and communications over the Amazon cloud. At no time prior to filing the present action has Innovation alleged infringement based on the use of Google's smart home technology.

[2] HTC did, on November 26, 2019, two days before Thanksgiving, eight days before Innovation's infringement and damages reports were due, and many months after HTC was obligated to produce relevant documents, produce a handful (less than 15) documents that appear to relate to the 5G Hub. But before that date, there was nothing.

under the Google Pixel tradename. That phone operates with the Google Assistant, not the HTC Alexa application, and it exchanges data on Google's networked servers, not the Amazon cloud. Armed with that information, Innovation undertook a further study and found that HTC had then recently introduced two other products that work with the Google Assistant, the Exodus 1 phone and the 5G Hub, the other two products accused of infringement in this action. Based on that discovery, Innovation initiated this action on October 15, 2019.

The products at issue in this action are not the same as those accused of infringement in *HTC I*. Indeed, if they were, they would already be part of that case. Just as the U11 is different than the U11 Life, and both are different than the U12+, the products at issue in this action differ from one another and from the U-series phones at issue in *HTC I*. Besides being marketed under different names, the products at issue here differ from those at issue in *HTC I* in that they interface with different networks, using different technologies (the products at issue in this action operate with the Google technology only). *See e.g.,* Dkt. 1 (present action) (describing data transfer involved with Google Assistant products). The products in the two cases are similar in some respects, such as the fact that all six accused products are imported, used and sold by HTC, and that all six have smart home functionality built it, they are different products and they each present their own infringement analyses.

## II. ARGUMENT

### A. This Court Should Deny HTC's Motion to Dismiss

Innovation has not split its claims. Innovation's 2018 Complaint included every HTC smart home product of which it was then aware. Those allegations obviously could not include products which HTC had not yet introduced. Nor could Innovation have amended its infringement contentions in *HTC I* to include the Google-enabled smart home HTC products – HTC did not disclose those products to Innovation. Indeed, just by chance Innovation's counsel

3

found an unexplained oddity in HTC's financial report in late August 2019 – very large sales of a product HTC's report identified only as product "S2." That product turned out to be the Pixel 2.

Claim splitting in the context of a patent case has a dimension not found in other types of actions. Traditional concepts of claim splitting preclude a party from bringing more than one action when the claims arise from the same event or set of facts. Patent infringement, however, is a continuing tort – the continued manufacture, use, importation and sale of every infringing product creates a new cause of action, the introduction of different products compounds the confusion. The Federal Circuit Court of Appeals ("Federal Circuit") long-ago created an elegant solution to the claim splitting problems that might arise. Although every claim of a patent defines a separate invention, *Jones v. Hardy*, 727 F.2d 1524, 1528 (Fed. Cir. 1984), it is not proper to assert a first set of claims of a patent against a product X and to assert a different set of claims of that same patent *against the same product* (product X) in a separate lawsuit. That is claim splitting in the patent world and it is forbidden. *CIVIX-DDI, LLC v. Expedia, Inc.*, 2005 WL 1126906 (N.D. Ill. May 2, 2005).

A patent owner, however, is not required to include all infringing products in one lawsuit. Indeed, a patent owner can accuse a competitor's product X of infringement, voluntarily dismiss that infringement case, *with prejudice*, and then file a second action against a different product, product Y, of that same competitor. *Young Eng'rs, Inc. v. United States Int'l Trade Comm'n*, 721 F.2d 1305, 1316 (Fed. Cir. 1983) ("we are unpersuaded that an 'infringement claim,' for purposes of claim preclusion, embraces more than the specific devices before the court in the first suit."). This is true even though product Y may have been on the market while the action against product X was pending. This follows from the fact that res judicata does not bar the assertion of rights *acquired during the litigation. Gillig v. Nike, Inc.*, 602 F.3d 1354, 1363 (Fed.

Cir. 2010). As a result, as the proponent of the claim preclusion defense, HTC must prove that the devices at issue in this case *are the same* as those at issue in *HTC I*. *Young Engineer's*, 721 F.2d at 1316.

Although not addressed by HTC, the *Young Engineers* holding is controlling here. *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008) ("Whether two claims for patent infringement are identical is a claim preclusion issue that is 'particular to patent law,' and therefore [the Court] analyze[s] it under Federal Circuit law."). In *Young Eng'rs*, the plaintiff patent owner dismissed a first action with prejudice on the eve of trial. *Young Eng'rs, Inc.*, 721 F.2d at 1307-1308. Later, the patent owner initiated a second proceeding involving the same patent but a second group of products from the same defendant. The parties in that action disputed whether the two port models accused of infringement in the second action were on the market at the time of the first action. *Id*. at 1307, fn. 1. Ultimately, that point was not relevant because the Federal Circuit ruled that the second lawsuit could proceed despite the prior dismissal as to the first group of products. The Federal circuit did so on the grounds that the defendant there failed to establish that the specific devices at issue in the second action were the same as those involved in the first action. *Id.* at 1316.

The products at issue in this case are different than those at issue in *HTC I*. They have different names, they have different structures, and they operate on different networks using a different protocol. Although both this action and *HTC I* action involve cellular phones and smart home technology, the phones at issue in the *HTC I* action work with the HTC Alexa technology and operate using the Amazon cloud. While those same products may also operate with the Google technology at issue in this proceeding (HTC's point), Innovation focused all of its infringement contentions in *HTC I* on the use of the Amazon technology, both in its pleadings

5

and in its Rule 3-1 infringement contentions. Innovation is not now attempting to change that position by accusing those same products of infringement because they may also operate with the Google technology. The products at issue here do not work with the HTC Alexa technology and they operate using Google's technologies, not Amazon's. HTC does not even acknowledge this critical product difference. Moreover, the 5G Hub accused of infringement in this action is not even a mobile phone (another difference not addressed by HTC). The products at issue in this action are not the same, or even essentially the same, as those at issue in *HTC I*.

Critically, the products in the two actions are so different that HTC *failed to even produce (other than a few that were incidentally produced) documents relating to any of the products accused of infringement in this action*. As this Court well knows, the practice in this District is to require the parties to produce relevant documents, both as to the products accused of infringement and to those products that are "substantially similar" to those products. *See GeoTag, Inc. v. Frontier Communications Corp.*, 2013 WL 12141427, at *2 (E.D. Tex. June 26, 2013). On July 24, 2019, Innovation's counsel reminded HTC's counsel that local practice required HTC to produce documents related products that are "substantially similar" to those identified in Innovation's P.R. 3-1 charts. Berquist Decl., Exh. 1.

HTC appears to have ignored both that message and its related discovery obligations. HTC failed to produce even one document relating to the HTC Exodus 1 phone. HTC failed to produce documents relating to the HTC 5G Hub, save for a handful of documents produced on the eve of the expert report deadline. HTC also failed to produce any documents relating to Google's Pixel 2 phone HTC manufactured, save for the single spreadsheet that shows significant sales of an "S2" product that Innovation had to figure out for itself corresponded to the Pixel 2. HTC cannot now take the position that these products are the same, or essentially

6

the same, as the products at issue in *HTC I*. And yet, despite the obvious inconsistency, that is exactly HTC's argument here. Ignoring its own conduct, HTC argues that Innovation could have independently learned of these products and therefore could have included them in the *HTC I* action instead of filing a new action. But HTC cannot ignore the fact that it failed to produce documents relating to these products. These products are either not substantially similar to the products accused in *HTC I* or HTC created the problem by failing to timely produce documents describing them.

Moreover, HTC makes too much of what was publicly available. First, HTC did not sell the Pixel 2 phones commercially and that product was not advertised on HTC's website. Rather, HTC sold the Pixel 2 phones to Google and it was Google, not HTC, who sold those phones as the Google Pixel phone. As to the other two products, those products were not found on HTC's website when Innovation's counsel reviewed that website in late 2018 while preparing its infringement contentions in *HTC I*, Berquist Decl., ¶ 3, and HTC itself concedes that the accused Exodus 1 phone was introduced after Innovation filed its complaint and the accused 5G Hub did not come onto the market until months after Innovation served its P.R. 3-1 infringement contentions. HTC Br. at 7 (Dkt. 7 at 12 of 31). Curiously, the press release HTC points this Court to for the release of the Exodus 1 phone is from Berlin, Germany and it advertises *early* access to this product, at least in Germany. Berquist Decl., Exh. 2. In any event, months after discovery in *HTC I* opened, Innovation should not be required to continuously monitor HTC's website for new product introductions. With discovery open, it was HTC's obligation to produce relevant materials.

Undeterred, HTC faults Innovation and suggests that Innovation could have amended its contentions to include these new products at the same time it amended its infringement

7

contentions following the *Markman* Order in *HTC I*. HTC Br. at 7. The problem with that argument is two-fold, HTC had still not disclosed the Pixel 2 phone, the Exodus 1 phone or the 5G Hub even at that late juncture and Patent Rule 3-6(a) permits amendment of the initial infringement contentions to the extent that it is appropriate to do so in light of the court's claim construction order – it does not provide *carte blanche* to permit the addition of new accused products. Innovation did serve a Rule 3-6(a) amendment, but that amendment was limited to addressing issues associated with this Court's claim construction. Even if Rule 3-6(a) provided *carte blanche* for any amendment, that Rule would not provide a basis to overrule or abrogate the Federal Circuit's holding in *Young Engineers* which expressly authorizes a second action as long as the products accused of infringement are not substantially the same, even after the conclusion of the first-filed action.

As noted above, the products at issue in this action are not essentially the same as those at issue in *HTC I*. Indeed, if they were, neither this action nor amendment of the infringement allegations in *HTC I* would be necessary. HTC believes that it has created the perfect legal screen for some of its best-selling products. Produce no documents relating to those products and then claim it is both too late to bring them into the first action while arguing that a second action is procedurally prohibited.

Contrary to HTC's assertion, Innovation does not present the same infringement cases for the two product groups. There are similarities, after all the same patent claims are at issue, but the infringement contentions in *HTC I* are limited to how the accused products there operate on the *Amazon network using Amazon communications*. The products at issue here do not even operate with HTC's Alexa technology <u>or</u> communicate over the Amazon cloud. The products at

issue here plainly differ from those at issue in *HTC I* as shown by Innovation's infringement contentions in the two cases:

| Complaint Filed in *HTC I* | Complaint Filed in Present Action |
|---|---|
|  | |

If the products at issue in this action were in fact the same as those at issue in *HTC I*, new infringement contentions would not have been necessary – the new products would have simply been added to the damages computation.

In a case involving facts similar to those at issue here, a Texas district court refused to dismiss a second filed action. *Davis-Lynch, Inc. v. Hilcorp Energy Co.*, 2009 U.S. Dist. LEXIS

9

125393 *6-7 (E.D. Tex. 2009). (Attached to the Berquist Declaration as Exhibit 3). The plaintiff in *Davis-Lynch,* sought leave to amend its preliminary infringement contentions in a first action to include additional products of the defendant. In denying the requested leave, the district court did not weigh the substantive prejudice to the plaintiff that would result if precluded from accusing those products in a subsequent action (effectively granting a royalty-free license in perpetuity). Rather, the court focused on advancing the first action to trial in a timely and efficient manner. *Id*. at *8-9. In response, the plaintiff there filed a second action directed to the additional products. The defendant asserted claim splitting and moved to dismiss.

Applying *Young Engn'rs* to those facts, and balancing the benefits of early disclosures under the local patent rules against the prejudice of being foreclosed from litigating new infringement issues, the *Davis-Lynch* court denied the motion to dismiss. That analysis and result apply with equal force to the facts here. Innovation did not seek leave to amend the allegations in *HTC I* given the product difference and stage of the case. Discovery was initially set to close at the end of October 2019, around the time Innovation first learned of HTC's Google-based products.

HTC's failure to address the controlling Federal Circuit authority <u>or</u> to establish that the products at issue in this case are the same as those at issue in the *HTC I* action are both fatal to HTC's present motion. At no point in its motion does HTC even mention *Young Engn'rs*, but instead muddies the waters by citing three dozen cases. Incredibly, the decisions upon which HTC relies do not address the controlling Federal Circuit analysis. In any event, HTC's cases

10

drive home the same or similar point: To be barred, a subsequent claim must involve the same, or essentially the same, product.³

Three of the cases HTC cites in its motion bear additional discussion. In *Orion IP, LLC v. Home Depot USA, Inc*., 2005 WL 8161153 (E.D. Tex. Oct. 7, 2015), no new products were at issue, just a new theory of infringement. *Id.* at *1. Unlike here, it is not clear that the second-filed action there involved new or different products or just new infringement theories. But the cases Judge Davis relied on in *Orion IP*, *CIVIX-DDI, LLC v. Expedia, Inc.,* 2005 WL 1126906 (N.E. Ill. May 2, 2005*)* and *American Stock Exchange, LLC v. Mopex, Inc*., 215 F.R.D. 87 (S.D.N.Y. 2002), undeniably involve classic claim splitting. In each, the patent owner had brought a first infringement action in which less than all of the claims of the patents at issue were asserted. In a subsequent action, the patent owners sought to assert other claims of the patents-in-suit *against the same accused products*. As noted above, that is not the case here.

Similarly, the plaintiff in *Adaptix, Inc. v. AT&T Mobility LLC*, 2015 WL 12696204 (E.D. Tex. May 12, 2015), asserted the same infringement theory against AT&T that it had previously lost in an earlier action arguing that the phones accused of infringement were manufactured by companies other than those involved in the prior California action. *Id*. at *5. But even the plaintiff's expert there conceded that the infringement theory was the same regardless of phone manufacturer. *Id*. at *9. Under those facts, the *Adaptix* court found the infringement claim barred. *Id.* In *HTC I*, Innovation is accusing the U11, U11 Life and U12+ phones operating on

---

³ HTC confuses the issues presented here by injecting unnecessary discussion of what it called *HTC III* into its argument. But that case, filed after Innovation filed the present action, was dismissed without prejudice under Rule 41(a)(i). Moreover, contrary to HTC's suggestion, the decision to include HTC's Amazon-based products and the Google-based products in that action is not insightful here. By the time that action was filed, Innovation had instituted an action against the U11, U11 Life and U12+ (*HTC I*) and the Pixel 2, Exodus 1 and 5G Hub (*HTC II*).

11

the Amazon cloud of infringement. Here, Innovation is accusing HTC's Pixel 2, Exodus 1 and G5 Hub operating on the Google cloud of infringement.

Nor does the holding in *Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025 (Fed. Cir. 2015), support HTC's position here. In *Keranos*, the district court had denied plaintiff's motion for leave to amend its infringement contentions under this District's local patent rules. The plaintiff there had identified a family of products and specific products by name within that family in its P.R. 3-1 disclosures but sought to augment that listing to include additional, specific product names and product numbers. The defendant opposed on the grounds, like those presented by HTC here, the plaintiff could have learned more, earlier from publicly available materials. The district court agreed, finding fault with plaintiff's alleged lack of diligence. The Federal Circuit reversed on that issue. *Id*. at 1038-29. But that is not the issue presented here. Innovation's P.R. 3-1 infringement contentions in the *HTC I* action identify every HTC product accused of infringement in that action. HTC seeks to expand the approach taken by the *Keranos* district court, reversed on appeal, to include products not at issue in the first action, even if they operate using different technologies.

HTC's remaining argument - that Innovation's filing is a collateral attack on this Court or the Local Practice in this District 's Order and that the present action is duplicative of the pending *HTC I* action are contradicted by the facts discussed above. Innovation did not file the present action in defiance of any order of this Court or local rule. Nor must a litigant include every claim it might have against another party in the same action. The issues presented by the two cases here are not identical. While the validity of the asserted patents will present the same issues, the products at issue in this case present infringement analyses in addition to those in the *HTC I* action. It is possible that the products at issue in the *HTC I* action will be found to

12

infringe, but not the products at issue in this action, or *vice-versa*. It is also possible that all products will be found to infringe or to not infringe. Because the present case addresses products that are different from those at issue in the *HTC I* action and because the present action presents infringement issues not found in that action, these two actions are not duplicative.

The allegations made by Innovation in this action are clearly not duplicative of those presented in *HTC I* and Innovation has not engaged in any claim splitting. Accordingly, Innovation respectfully requests denial of HTC's motion to dismiss.

### B. In the alternative, This Court Should Consolidate This Action With the *HTC I* Action

Although Innovation's claims under the '983, '918 and '798 patents against HTC are now present in two separate actions pending before this Court, Innovation is committed to resolving its disputes with HTC in the most cost effective manner possible. Innovation would prefer not to fight HTC twice, using this Court's resources or those of two juries, to resolve its disputes with HTC. As it turns out, the sales of the U11, U11 Life and the U12+ at issue in the *HTC I* action are almost insignificant by comparison with those at issue in the present action. That information, like the existence of the HTC Google-based products, came as a surprise to Innovation in late August, early September 2019. Innovation prepared and filed the present complaint on October 15, 2019 but held off serving that complaint while the parties were involved in mediation and settlement discussions.

Those discussions were a total bust. It now appears that HTC believed that it could utilize a legal maneuver, such as that presented by this motion, to avoid ever having to answer for the sales of its Google-based products. Rather than continue with both actions separately, and to resolve the complaints raised by HTC, Innovation proposes consolidation of the two actions in some fashion, either by granted leave to amend the contentions in *HTC I* to include the

13

new, Google-based products, or to continue both actions but consolidate them. It would be fundamentally unfair to preclude Innovation from pursuing its infringement claims against HTC's Pixel 2 phones, Exodus 1 phones or 5G Hubs and this action should either proceed separately or be consolidated with the claims pending in the *HTC I* action.

Date: January 8, 2020

Respectfully submitted:

*/s/ Donald L. Jackson*
Donald L. Jackson, VA Bar No. 42,882
(Admitted E.D. Tex.)
James D. Berquist, VA Bar No. 42,150
(Admitted E.D. Tex.)
Gregory A. Krauss, VA Bar No. 84839
(Admitted E.D. Tex.)
Alan A. Wright, VA Bar No. 46506
(Admitted E.D. Tex.)
**DAVIDSON BERQUIST JACKSON & GOWDEY LLP**
8300 Greensboro Dr., Suite 500
McLean, Virginia 22102
Telephone: (571) 765-7700
Facsimile: (571) 765-7200

*Attorneys for Plaintiff Innovation Sciences, LLC*

14

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing Plaintiff Innovation Sciences, LLC's Opposition to HTC's Motion to Dismiss has been served on January 8, 2020, to all HTC counsel of record who are deemed to have consented to electronic service.

DATED: January 8, 2020         */s/ Donald L. Jackson*
                               Donald L. Jackson