# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| INNOVATION SCIENCES, LLC | § | |
| | § | |
| v. | § | Civil Action No. 4:19-CV-00752 |
| | § | Judge Mazzant |
| HTC CORPORATION | § | |
| | § | |

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant HTC Corporation's Rule 12(b)(6) Motion to Dismiss for Improper Claim Splitting and Circumvention of Patent Local Rules (Dkt. #7). Having considered the motion and the relevant pleadings, the Court finds that the motion should be denied.

## **BACKGROUND**

The facts of this case and the question presented by Defendant's motion requires the Court to discuss how this suit is intertwined with another ongoing case involving the same parties: *Innovation Sciences, LLC v. HTC Corporation*, Case No. 4:18-CV-00476 ("*HTC I*"). In *HTC I*, Plaintiff Innovation Sciences brings three counts of patent infringement against Defendant for alleged infringement of U.S. Patent No. 9,912,983 ("the '983 patent"), U.S. Patent No. 9,942,798 ("the '798 patent"), and U.S. Patent No. 9,729,918 ("the '918 patent"). Case No. 4:18-CV-00476, (Dkt. #1). The accused devices in *HTC I* are the HTC U11 and U12 smartphones ("First Accused Devices"). Case No. 4:18-CV-00476, (Dkt. #1 ¶ 16).

This action—"*HTC II*"—asserts infringement of the same three patents. But it asserts infringement against three different HTC devices: the Pixel 2 phone, the Exodus 1 phone, and the HTC 5G Hub ("Second Accused Devices") (Dkt. #1 ¶ 16). And while Plaintiff's infringement analysis against the First Accused Devices was limited to the HTC Alexa App and the information communicated by the First Accused Devices to the Amazon cloud, Plaintiff's infringement

analysis against the Second Accused Devices is limited to the device's operation with Google technology. *See* Case No. 4:18-CV-00476, (Dkt. #1); (Dkt. #1; Dkt. 11 at pp. 4–6).

On December 30, 2019, Defendant filed its Rule 12(b)(6) Motion to Dismiss for Improper Claim Splitting and Circumvention of Patent Local Rules (Dkt. #7). On January 8, 2020, Plaintiff responded (Dkt. #11). Defendant replied on January 15, 2020; Plaintiff filed its sur-reply on January 23, 2020 (Dkt. #14). Defendant also filed two notices of new facts after the briefing had closed: Defendant filed the first notice on March 20, 2020 (Dkt. #21), and it filed the second notice on March 31, 2020 (Dkt. #25). The Court heard argument from the parties regarding this motion on April 1, 2020 (Dkt. #30). The parties also submitted a proposed case schedule in the event that Defendant's motion to dismiss is denied and the Court consolidates all related Innovation-HTC matters (Dkt. #32).

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.),*

*L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

### I. The Rule Against "Claim Splitting"

When a case turns on general principles of claim preclusion, the law of the regional circuit in which the district court sits applies. *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed.

3

Cir. 2008). But where the claim-preclusion issue is whether two claims for patent infringement are identical, Federal Circuit law applies without reference to regional circuit law. *Id.*; *see also Nystrom v. Trex Co.*, 580 F.3d 1281, 1285 (Fed. Cir. 2009) The latter is the situation here—Defendant asserts that Plaintiff is engaged in "claim splitting" by filing a second lawsuit alleging infringement of the same patents against the same functionality (Dkt. #7 at p. 6). *See In re ASM Int'l, N.V.*, 774 F. Appx. 650, 653 (Fed. Cir. 2019) ("Generally, the claim-splitting doctrine is a form of claim preclusion . . . .").

In applying the doctrine of claim preclusion, courts applying Federal Circuit law are guided by the Restatement (Second) of Judgments. *Acumed*, 525 F.3d at 1323. That means that a claim is defined by the transactional facts from which it arises—with regard to a patent, that means the structure of the device or devices in issue. *Id.* at 1324 (quoting *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 479 (Fed. Cir. 1991)). So, unless the accused device in the action before the Court is "essentially the same" as the accused device in a prior action, claim preclusion does not apply. *Id.* And it is the party asserting claim preclusion that has the burden of showing the accused devices are "essentially the same," which means the party asserting claim preclusion must show that any differences between the devices are "merely colorable" or "unrelated to the limitations in the claim of the patent." *Id.* (quoting *Foster*, 947 F.2d at 480).

## II. *HTC II* Is Not Barred by Claim Preclusion

Defendant has not carried its burden of showing that Plaintiff has impermissibly split its claims. Defendant—relying heavily on *Adaptix, Inc. v. AT&T Mobility LLC*, 6:12-CV-120, 2015 WL 12696204 (E.D. Tex. May 12, 2015) (Craven, M.J.)—argues that Plaintiff accuses essentially the same products in both lawsuits. Defendant asserts that just like the plaintiff in *Adaptix* did, Plaintiff has alleged infringement of different devices for essentially the same reason in two lawsuits (Dkt. #7 at p. 18). Defendant submits that although differences do exist between the First

Accused Products and the Second Accused Products, those differences are immaterial to the infringement inquiry (Dkt. #7 at p. 18). Specifically, Defendant argues that the First Accused Products and the Second Accused Products both allegedly infringe for the same reasons: both products use video conversion and smart-home functionality claimed in the patents (Dkt. #7 at p. 18). The only differences are colorable, Defendant argues, and are that the devices are physically different and the alleged method of infringement relies on different smart-home assistants (Dkt. #7 at p. 20).

In *Adaptix*, the plaintiff filed multiple suits for patent infringement against a series of wireless carriers and handset manufacturers. 2015 WL 12696204, at \*1. Several of those suits were transferred to the Northern District of California ("the California Cases"). *Id.* at \*2. Judge Grewal entered final judgment for the defendants in the California Cases on all of the plaintiff's claims for infringement; Judge Grewal also ruled that four of the asserted claims were invalid. *Id.* at \*3. The Defendants moved for summary judgment on preclusion grounds in the Eastern District of Texas, arguing that the only remaining claims were a subset of the patent claims on which the California court granted summary judgment of non-infringement. *Id.* The court agreed. *Id.* at \*1.

The court noted that although the accused handsets in the California Cases were different, the plaintiff's infringement contentions were identical in both sets of cases. *Id.* at \*13. And the plaintiff did not dispute that it had sought relief in the California Cases under the same theory of direct infringement that it was pursuing in the Eastern District of Texas, which was that "the accused devices operating on the accused carrier networks allegedly infringe[d] through their use of Mode 3 CQI reporting as defined in the 3GPP LTE industry standard." *Id.* In fact, the plaintiff could not identify any difference between "the LG/Pantech handsets in these cases and the Apple/HTC handsets in the California cases," let alone any differences related to the limitations in

the claims of the patent. *Id.* at *15. Under those facts, the court found that the California Cases and the cases before the Eastern District of Texas involved the same infringement cause of action. *Id.*

Plaintiff distinguishes *Adaptix*, arguing that unlike *Adaptix*, the differences between the First Accused Products in the *HTC I* suit and the Second Accused Products in the *HTC II* suit matter to the infringement analysis (Dkt. #14 at p. 3; Dkt. #30 at p. 60). Plaintiff asserts that the important differences include the fact that—rather than utilizing the HTC Alexa Application and operating over the Amazon Cloud like the First Accused Products do—the Second Accused Products operate only using their built-in Google technology over the Google cloud, which requires a different infringement analysis in order for Plaintiff to be able to prove its apparatus claims (Dkt. #14 at p. 3; Dkt. #30 at pp. 56–57). Plaintiff also points to specific differences between the First Accused Products and the Second Accused Products, including the fact that the 5G Hub does not use the same processor found in any of the First Accused Products and the fact that all of the accused products have their own circuitry that impacts Plaintiff's claims of infringement (Dkt. #14 at p. 4; Dkt. #30 at p. 57). Thus, Plaintiff asserts that the devices are not "essentially the same" for purposes of claim preclusion. (Dkt. #30 at p. 57). The Court agrees with Plaintiff. Defendant has not carried its burden of showing that the differences between the First Accused Products and the Second Accused Products are merely colorable or unrelated to the limitations of the patents.

As Plaintiff correctly points out, the situation here is much different than the situation the court dealt with in *Adaptix*. Not only did the plaintiff in *Adaptix* admit that it could not identify any differences between the accused handsets in the California Cases and the accused handsets before the court, but the plaintiff's infringement contentions in the two actions were identical. On

6

the other hand, the differences outlined by Plaintiff here relate to the limitations of the patents: for example, claim 22 of the '983 patent discusses a "wireless HUB system for managing information comprising: an input interface configured to receive a wireless signal . . . a decoder; and a network interface configured to provide a communication through a network communication channel . . ." (Dkt. #31, Exhibit 1 at p. 12). As Plaintiff argues, the First Accused Products and the Second Accused Products contain numerous physical differences, and the method that the devices use to allegedly infringe differ from the First Accused Products to the Second Accused Products.[1] These differences impact the limitations expressed in the claims and require individual and unique claim charts to prove infringement for each device. That these devices are not "essentially the same" is magnified by the fact that Plaintiff essentially conceded that a finding of infringement against one device would not necessarily mean another of Defendant's devices infringed (Dkt. #30 at p. 58).

Defendant's retort to this argument is twofold: (1) Defendant claims that it was not contained in any of the briefing, and it is thus improper for the Court to consider it; and (2) because the transceivers and infringement contentions based on the transceivers is subject to an ITC protective order, Plaintiff cannot submit them to the Court—but even if Plaintiff could, Plaintiff would not be able to present evidence that the devices are different (Dkt. #30 at pp. 66–69). Defendant's arguments miss the mark.

First, Plaintiff's argument was properly presented in Plaintiff's sur-reply. *See* (Dkt. #14 at pp. 3–4). This gave Defendant an opportunity to retort to the argument at the hearing. Nor was it a new argument—Plaintiff contested from the outset that the Second Accused Devices were essentially the same as the First Accused Devices (Dkt. #11 at p. 5). And second, the burden is on *Defendant* to show that the accused devices are "essentially the same." The burden is not on

---

[1] As Plaintiff points out, one of the Second Accused Devices—the 5G Hub—does not use a processor found in any of the First Accused Devices (Dkt. #14 at p. 4).

Plaintiff to show that the devices are different. Based on the evidence before the Court, Defendant has not carried this burden.

Additionally, "[c]laim preclusion implicates both 'the weighty policies of judicial economy and fairness to parties.'" *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1169 (Fed. Cir. 2018) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)). Even if Plaintiff had split its claims, the Court finds that dismissal would be improper under these facts. In special circumstances, a "plaintiff should be left with an opportunity to litigate in a second action that part of the claim which he justifiably omitted from the first action." *Davis-Lynch, Inc. v. Hilcorp Energy Co.*, 6:09-CV-168, 2009 WL 10659687, at *2 (E.D. Tex. Nov. 18, 2009), *adopted by* 6:09-CV-168, 2010 WL 11553311 (E.D. Tex. Jan. 4, 2010) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 26, cmt. b). As Defendant admits, two of the Second Accused Devices were released *after* Plaintiff filed its first action (Dkt. #7 at p. 25). While Defendant argues that this means Plaintiff should have moved for leave to add the Second Accused Products to its infringement contentions in *HTC I*, Plaintiff explains that it did not seek leave to amend given the differences between the First Amended Products and the Second Amended Products, as well as the advanced stage of *HTC I* (Dkt. #11 at p. 13). Just as the court in *Davis-Lynch* held under similar facts, "forever barring [Plaintiff's] claim for being a collateral attack would be inconsistent and unfair." *Id.* at *3. The Court finds that the Second Accused Products were justifiably omitted from *HTC I*. Accordingly, the Court denies Defendant's Motion to Dismiss on claim-splitting grounds.

Defendant also argues that Plaintiff's complaint should be dismissed because it circumvents the Court's procedural rules, wastes judicial resources, and prejudices HTC, but the argument is often duplicative of its claim-splitting arguments. *See* (Dkt. #7 at pp. 26–29). To the extent that Defendant's argument raises alternate grounds for dismissal, the Court finds that there

is no ground to dismiss Plaintiff's complaint under Rule 12(b)(6) for circumventing the Court's rules or wasting judicial resources.

### III. Consolidation Is Appropriate

Plaintiff requested "[i]n the alternative" that the Court should either consolidate *HTC I* and *HTC II* or grant Plaintiff leave to amend its infringement contentions in *HTC I* to include the Second Accused Devices (Dkt. #11 at p. 16). Defendant opposes this request, arguing again that it is an end run around the Court's rules. The Court disagrees with Defendant's contention, and the Court finds that consolidation of all Innovation-HTC matters is appropriate.

"Federal district courts have very broad discretion in deciding whether or not to consolidate." *Core Wireless Licensing S.A.R.L. v. LG Elecs. Inc.*, 2:14-CV-911-JRG-RSP, 2015 WL 11120719, at *1 (E.D. Tex. July 1, 2015) (quoting *Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1532 (5th Cir. 1993)). Although framed by Plaintiff as an alternative to dismissal, the Court finds that consolidation of these two actions—both involving alleged infringement of the same three patents—will avoid the unnecessary cost of empaneling two juries and requiring both juries to learn the technology at issue without prejudicing either party. The Court will also, as contemplated by the parties' joint scheduling order, consolidate *HTC I* and *HTC II* with a third, related declaratory-judgment action: Case No. 4:20-CV-00180. The first-filed case, Case No. 4:18-CV-00476, shall serve as the lead case.

The Clerk of the Court shall add the parties from the consolidated cases to the lead case, as well as Lead and Local Counsel only. Any other counsel who wishes to appear in the lead case shall file a notice of appearance in that case. The individual cases will remain active for trial. Additionally, all pending motions will be considered as filed and without prejudice due to consolidation. All future motions shall be filed in the lead case until further notice of the Court.

## CONCLUSION

It is therefore **ORDERED** that Rule 12(b)(6) Motion to Dismiss for Improper Claim Splitting and Circumvention of Patent Local Rules (Dkt. #7) is hereby **DENIED**.  The Clerk is directed to consolidate **Case No. 4:19-CV-00752** and **Case No. 4:20-CV-00180** with the lead case, **Case No. 4:18-CV-00476,** in accordance with the instructions above.   The Clerk is directed to docket all future filings in the above-listed matters under **Case No. 4:18CV00476.**

The Court hereby CANCELS the May 12, 2020 Scheduling Conference.  The Court will enter a new scheduling order for the lead case based on the parties' proposed case schedule (Dkt. #32).

**SIGNED this 11th day of May, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE